UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS ROMO, et al., | Case No.  15-cv-03708-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| WELLS FARGO BANK, N.A., et al., | Docket No. 10 |
| Defendants. | |

## I.   INTRODUCTION

On May 15, 2015, Plaintiffs Chris Romo and Maria Dulia Romo filed this action in the Superior Court of the State of California against Defendant Wells Fargo Bank.  Docket No. 1 (Not. of Removal, Ex. A).  Plaintiffs alleged that Defendant failed to disclose to Plaintiffs in Defendant's Option Adjustable Rate Mortgage Documents ("ARM") that:  (1) the payment listed on the Note had no relevance to the actual interest rate being charged on the loan; (2) that making the minimum payments as listed on the Note will result in negative amortization and the principal balance would increase; (3) that the payment amounts listed on the Note were insufficient to pay both principal and interest; and (4) that Plaintiffs were entitled to a loan modification under the HAMP program.

Wells Fargo removed the state court action to federal court.  Not. of Removal.  Pending before the Court is Wells Fargo's motion to dismiss Plaintiffs' First Amended Complaint ("FAC") on the grounds that (1) Plaintiffs' claims are preempted by Home Owners' Loan Act ("HOLA"); (2) Plaintiffs do not have standing to sue under the HAMP guidelines; (3) Plaintiffs do not state a UCL, a Negligence, a Negligent Misrepresentation, a Fraud, and a Breach of Contract Claim. Docket No. 10 ("MTD").

## II.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Chris Romo and Maria Dulia Romo are the sole owners of the single family residence subject to this dispute.  FAC ¶¶ 4.  In 2004, Plaintiffs obtained a fixed rate Option ARM loan (a "Pick a Pay" loan) from Wachovia bank.  FAC ¶¶ 16, 18, 26.  The Complaint alleges that the terms of the loan are as follows: (1) the loan has a low fixed payment amount for the first 10 years of the promissory note; (2) the payment amount is unrelated to the interest rate listed in the promissory note; (3) the promissory note states that each payment will go to principle and interest; (4) the payment amount listed on the promissory note is not sufficient to pay the actual interest; and (5) the payments during the first 10 years are not applied to the principle.  FAC ¶ 33.  The Romos realized the problem with their loan late 2008 or 2009, when their monthly balance had increased significantly beyond the amount that they originally borrowed.  *See* FAC ¶ 46.  When Plaintiffs became aware of the problem with their loan, there were already multiple suits pending against the Defendant, arising from the disclosure problems the Romos had encountered.  Around late 2009 or early 2010, Plaintiffs learned about *In Re Wachovia* class action lawsuit that involved a "Pick a Pay" loan.  Plaintiffs opted out of that suit on March 8, 2011.  FAC ¶¶ 72, 113.  Without avail, from July 15, 2009 to April 30, 2015, Plaintiffs submitted nine applications for loan modification.  FAC ¶¶ 48, 185, 186.  Plaintiffs bring this suit against the bank asserting the following causes of action: (1) violation of UCL section 17200 *et seq*; (2) negligence; (3) breach of contract; (4) fraud-intentional misrepresentation; and (5) negligent misrepresentation.

## III.   REQUESTS FOR JUDICIAL NOTICE

A.   Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), evidence beyond the pleading should not be considered unless: (1) the document is attached to or incorporated by reference into the complaint; or (2) the fact is subject to judicial notice pursuant to Federal Rule of Evidence 201.  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy

2

cannot reasonably be questioned." Fed. R. Evid. 201. Courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original). Facts subject to judicial notice may be considered on a motion to dismiss. *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

The doctrine of incorporation by reference is distinct from judicial notice. The doctrine "permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the . . . pleadings.'" *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

A court "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal citations omitted). Such documents do not convert the motion to dismiss into a motion for summary judgment. *Id.* The Ninth Circuit states that "judicial notice is inappropriate where the facts to be noticed are irrelevant." *Meador v. Pleasant Valley State Prison*, 312 F. App'x 954, 956 (9th Cir. 2009).

B.    Defendant's Request

Without opposition from Plaintiffs, Defendant requests judicial notice over seven exhibits: (A) Certificate of Corporate Existence issued by the Office of Thrift Supervision ("OTS"), certifying that World Savings Bank, FSB, is a federal savings bank; (B) Letter from the Office of Thrift Supervision, Department of the Treasury reflecting the name change from World Savings Bank, FSB, to Wachovia Mortgage, FSB; (C) Charter of Wachovia Mortgage, FSB; (D) Official Certification of the Comptroller of the Currency stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.; (E) Printout from the website of the Federal Deposit

United States District Court
For the Northern District of California

3

Insurance Corporation showing the history of Wachovia Mortgage, FSB; (F) Deed of Trust recorded in the official records of the Sonoma County Recorder's Office; and (G) Adjustable Rate Mortgage Note.  Defendant's Request For Judicial Notice ("D's RJN"), Docket No. 11.  The Court **GRANTS** Defendant's request for judicial notice of the Exhibits A-G.  In this case, Exhibits A-F are judicially noticeable because these government records and public documents are not subject to reasonable dispute.  *See Lopez v. Wachovia Mortg.*, No. C 10-01645, 2010 U.S. Dist. LEXIS 72439, at *2 (N.D. Cal. 2010) (taking judicial notice of nearly identical documents).  As for Exhibit G – Plaintiff's Adjustable Rate Mortgage Note – it meets the requirements of the evidence on which the complaint "necessarily relies" because: (1) the FAC "refers" to the Note in paragraph 1; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.  *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011); *see also Lee v. Wells Fargo Bank, N.A.*, No. EDCV151313VAPKKX, 2015 WL 9289667, at *2 (C.D. Cal. Dec. 17, 2015) (taking judicial notice of an Adjustable Rate Mortgage Note).  Accordingly, the Court takes judicial notice of Plaintiff's Note.

C.      Plaintiffs' Request

Without opposition from Defendant, Plaintiffs ask the Court to take judicial notice of four exhibits or to consider them under the doctrine of incorporation by reference: (A) Order, *Mandrigues et. al v. World Savings, Inc. et. al.*, No. C 07-04497 JF, filed April 9, 2008; (B) Second Amended Complaint filed in *Mandrigues et. al v. World Savings, Inc. et. al.*, No. C 07-04497 JF on December 31, 2007; (C) Order, *Mandrigues et. al v. World Savings, Inc. et. al.*, No. C 07-04497 JF, filed August 19, 2009; (D) Judgment filed in *Mandrigues et. al v. World Savings, Inc. et. al.*, No. C 07-04497 JF on May 17, 2011.  Plaintiffs' Request For Judicial Notice ("P's RJN"), Docket No. 14.

The Court **GRANTS** Plaintiffs' request for judicial notice of the Exhibits A-D.  In this case, Exhibits A-D are judicially noticeable because a court may take judicial notice of court records in another case.  *See e.g.*, *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct

4

relation to matters at issue."); *see also United States v. Wilson,* 631 F.2d 118 (9th Cir. 1980) (stating that a court may take judicial notice of court records in another case). Notice can be taken, however, "only for the limited purpose of recognizing the 'judicial act' that the order represents on the subject matter of the litigation." *United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir. 1994) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992)). *See also General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082, n.6 (7th Cir. 1997) ("We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth [of the matter] asserted therein because these findings are disputable and usually are disputed"); *San Luis v. Badgley*, 136 F.Supp.2d 1136, 1146 (E.D. Cal. 2000) (quoting *Jones* for the proposition that a court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the litigation, but rather to establish the fact of such litigation and related filings"). Applying this standard, the Court may take judicial notice of the existence and legal effect of the orders and judgment in *Mandrigues et. al v. World Savings, Inc. et. al.*, No. C 07-04497 JF, but not the accuracy, *e.g.*, of any findings therein.

## IV.    DISCUSSION

A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The

1  plausibility standard is not akin to a 'probability requirement' but it asks for more than sheer

2  possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

3  B.  <u>Claims Based on Conduct Regarding the Origination of the Loan in 2004 and the Alleged</u>

4  <u>Deception Regarding Interest Rate and Negative Amortization are Time-Barred</u>

5  Plaintiffs' UCL claim is premised on Defendant's alleged failure to disclose negative

6  amortization during the 2004 origination of the loan.  An action to enforce a UCL claim must be

7  brought within four years of the alleged violation.  Cal. Bus. & Prof. Code § 17208.  The contract

8  claim is likewise based on the alleged accuracy of disclosures made during the 2004 origination of

9  the loan.  FAC ¶¶ 248-49, 252.  The statute of limitations for breach of written contract is four

10  years.  C.C.P. § 337(1).

11  This suit was filed was on May 5, 2015.  Not. of Removal, Ex. A.  However, Plaintiffs

12  were on constructive notice of the "negative amortization" feature of the loan when the loan

13  originated in October 2004.  Section 3(E) of the Note ("Deferred Interest; Additions to My Unpaid

14  Principal") states: "From time to time, my monthly payments *may be insufficient* to pay the total

15  amount of monthly interest that is due.  If this occurs, the amount of interest that is not paid each

16  month, called 'Deferred Interest,' *will be added to my Principal* and will accrue interest at the

17  same time as the Principal."  D's RJN, Ex. G at 3 (emphasis added).  Moreover, the deed of trust

18  discloses on the first page that "the maximum aggregate principal balance secured by this deed of

19  trust is $625,000 which is 125% of the original principal amount."  D's RJN, Ex. F at 1.  Thus, the

20  loan documents expressly disclosed that the terms of the loan allow for increases in the loan's

21  principal balance and monthly payment.  Therefore, the UCL and breach of contract claims[1] are

22  untimely.

23  Plaintiffs argue that their claims are subject to the "delayed discovery" rule and that they

24

25  _____

26  [1] Plaintiffs' third cause of action for breach of contract alleges that Defendant "breached the
written contractual agreement by failing to apply any portion of Plaintiffs' monthly payments
towards their principal loan balances."  FAC ¶ 253.  Plaintiffs allege that Wells Fargo charged

27  "the much higher rate listed in the notes" rather than the "rate used to calculate the [TILDS]
payment schedule."  FAC ¶¶ 248-49, 252.  As noted, the 2004 loan origination documents

28  expressly disclosed that the terms of the loan allow for increases in the loan's principal balance
and monthly payment.

**United States District Court**
For the Northern District of California

1    had no knowledge of the negative amortization feature of the loan until after the class action in *In*

2    *Re Wachovia* was filed.  Docket No. 15 at 11.  ("Opp'n").  Under the discovery rule, the

3    limitations period does not begin to run until the plaintiff discovers (or reasonably should

4    discover) that she has been injured.  *Lukovsky v. City and County of San Francisco*, 535 F.3d

5    1044, 1048 (9th Cir. 2008).  *See also Unigard Sec. Ins. Co. v. Kansa Gen. Ins. Co.*, 1994 U.S.

6    App. LEXIS 35914, *5 (Wash. Dec. 7, 1994) (stating that "[t]he discovery rule requires a plaintiff

7    to use due diligence in discovering the basis for the cause of action.  In other words, the discovery

8    rule will postpone the running of a statute of limitations only until the time when a plaintiff,

9    through the exercise of due diligence, should have discovered the basis for the cause of action.").

10          The Romos cannot rely on the discovery rule to save their claims from the statute of

11   limitations.  If they had exercised due diligence, they would have discovered the negative

12   amortization feature of the loan either by looking at the loan documents or simply looking at their

13   monthly statements that would have revealed increasing principal.  Although the monthly

14   statements are not in the record, Plaintiffs admit that "[i]n late 2008 or 2009, the Plaintiffs began

15   to realize that their monthly balance had increased significantly beyond the amount that they

16   originally borrowed."  FAC ¶ 46.  They provide no explanation as to why this increase in monthly

17   balance should not have been discovered earlier.  Even as alleged, under the discovery rule, time

18   had already begun to run by late 2008 or 2009.  The claims based on 2004 conduct are still

19   untimely even if the Romos were given the benefit of the delayed discovery rule.

20          To be sure, there is a basis for tolling the limitations period.  In late 2009 or early 2010, a

21   putative class action lawsuit that involved a "Pick a Pay" loan was filed and Plaintiffs were

22   members of the putative class.  FAC ¶ 72.  The suit tolls the limitation period temporarily, but the

23   clock started to run again on March 8, 2011 when the Romos opted out of the class action.  *Id.* ¶

24   113.  Generally, statutes of limitations are tolled for all individuals who would be eligible for class

25   membership from the commencement of a class action suit until the class certification is denied or

26   the individual chooses to opt out.  *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 551

27   (1974) (the class members should be considered parties to the suit "until and unless they received

28   notice thereof and chose not to continue.")  As the Second Circuit noted in *In re WorldCom Sec.*

*Litig.*, 496 F.3d 245, 255 (2d Cir. 2007), "The theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action 'until and unless they received notice thereof and chose not to continue.'  *American Pipe*, 414 U.S. at 551.  Because members of the asserted class are treated for limitations purposes as having instituted their own actions, at least so long as they continue to be members of the class, the limitations period does not run against them during that time.  Once they cease to be members of the class-for instance, when they opt out or when the certification decision excludes them-the limitation period begins to run again on their claims."  *See In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007); *Hrdina v. World Sav. Bank, FSB*, No. C 11-05173 WHA, 2012 WL 294447, at *2 (N.D. Cal. Jan. 31, 2012) (The *Mandrigues* case, which began August 30, 2007, tolled the applicable statute of limitations for plaintiff's claim.  Applying the *American Pipe* rule, the statute of limitations for plaintiff's claim began to run in August 2007, was tolled for the period between August 30, 2007, and April 29, 2011, because of the *Mandrigues/Pick–A–Payment* class action, and *began to run again on the date plaintiff opted out of the settlement agreement*—April 29, 2011.).  *Hrdina v. World Sav. Bank, FSB*, No. C 11-05173 WHA, 2012 WL 294447, at *2 (N.D. Cal. Jan. 31, 2012) (emphasis added).  Even assuming the clock did not run between the time of discovery of the increase in principal (delayed discovery rule) and the filing of the class action suit in 2009-2010, the statute clearly began to run by March 8, 2011, more than four (4) years before this suit was filed.  Accordingly, all the subject claims are time barred.

C.    <u>Claims Arising Before November 1, 2009 are Preempted by the Home Owners' Loan Act</u>

Defendant argues that Plaintiffs' UCL, Contract, Negligence, Negligent Misrepresentation, and Fraud claims based on the conduct that took place prior to November 1, 2009[2] are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*  MTD at 4.  The Complaint alleges that in 2004 Wells Fargo failed to disclose to Plaintiffs that the Option ARM loan was a negative amortization loan.  FAC ¶¶ 18, 200.  Federal savings associations, including federal

---

[2] By choosing this date, Defendant does not seek resolution of question whether HOLA continues to apply to the World Savings Bank after the November 1, 2009 merger with Wells Fargo Bank N.A., because Wells Fargo was not a federal savings bank.  MTD at 2.

**United States District Court**
For the Northern District of California

savings banks, are subject to HOLA and regulated by the Office of Thrift Supervision (OTS).  12

U.S.C. § 1464; *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).  Plaintiffs'

loan originated with World Savings Bank, which was a federal savings bank subject to HOLA and

OTS regulations.  D's RJN, Ex. A.  World Savings Bank later changed its name to Wachovia

Mortgage, FSB, remaining under the regulatory authority of OTS and subject to HOLA.  D's RJN,

Ex. B. Wachovia Mortgage is now a division of Wells Fargo.  D's RJN, Ex. D.  Thus, although

Wells Fargo itself is not subject to HOLA and OTS regulations, this action is nonetheless

governed by HOLA because Plaintiffs' loan originated with a federal savings bank and was

therefore subject to the requirements set forth in HOLA and OTS regulations.  *Lopez v. Wachovia*

*Mortg.*, 2010 WL 2836823, at *2 (N.D. Cal. 2010) (finding that although Wells Fargo is a

federally chartered national bank, the action is governed by HOLA because the loan originated

with World Savings Bank, which was regulated by OTS and subject to HOLA).

The scope of HOLA preemption is quite broad.  The Ninth Circuit has described HOLA

and OTS regulations as a "radical and comprehensive response to the inadequacies of the existing

state system." *Silvas*, 514 F.3d at 1004 (quoting *Conference of Fed. Sav. & Loan Ass'ns v. Stein*,

604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921 (1980)).  In its role as the principal

regulator of federal savings associations, OTS promulgated an express field preemption regulation

codified at 12 C.F.R. § 560.2.  The regulation states that "OTS hereby occupies the entire field of

lending regulation for federal savings associations."  12 C.F.R. § 560.2(a).  The effect of this

regulation is to leave virtually "no room for state regulatory control."  *Silvas*, 514 F.3d at 1004

(quoting *Conference of Fed. Sav.*, 604 F.2d at 1257, 1260).

OTS regulations provide guidance on determining whether a state law is preempted.

Section 560.2(b) provides a nonexclusive list of the types of state laws preempted by the

regulation.  This list includes "state laws purporting to impose requirements regarding":

> (4) The terms of credit, including amortization of loans and the
> deferral and capitalization of interest and adjustments to the interest
> rate, balance, payments due, or term to maturity of the loan,
> including the circumstances under which a loan may be called due
> and payable upon the passage of time or a specified event external to
> the loan;

> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

12 C.F.R. § 560.2(b)(4),(b)(5), (b)(9), (b)(10).

OTS further instructs that the first step in a preemption analysis is to determine whether the state law at issue is of a type listed in paragraph (b). *Silvas*, 514 F.3d at 1005. In doing so, the court does "not look merely to the abstract nature of the cause of action allegedly preempted but rather to the functional effect upon lending operations of maintaining the cause of action." *Naulty v. GreenPoint Mortg. Funding, Inc.*, Nos. C 09-1542, C 09-1545, 2009 WL 2870620, at *4 (N.D. Cal. 2009). If an application of the state law to the activities of the federal savings bank would "impose requirements" regarding the lending activities listed in paragraph (b), then the analysis ends there; the law is preempted. *Silvas*, 514 F.3d at 1005. Paragraph (c), which lists certain state laws that are not necessarily preempted,[3] comes into play only if the state law is not covered by

_____

[3] Title 12 of the Code of Federal Regulations § 560.2 ("Applicability of Law") provides:

> (c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
>
> > (1) Contract and commercial law;
> >
> > (2) Real property law;
> >
> > (3) Homestead laws specified in 12 U.S.C. 1462a(f);
> >
> > (4) Tort law;
> >
> > (5) Criminal law; and
> >
> > (6) Any other law that OTS, upon review, finds:

United States District Court
For the Northern District of California

10

paragraph (b).  *Id.*

Plaintiffs' first cause of action, for unlawful business acts or practices in violation of California's Unfair Competition Law (UCL), Cal. Bus. and Professional Code § 17200, *et seq.*, is preempted by HOLA.  Plaintiff predicates his UCL claim on the "loan application process," and the fact that "the loan documents provided to plaintiff uniformly failed to disclose and omitted material information that was known only to World Savings, Wachovia and Wells Fargo."  FAC ¶ 197.  The Complaint alleges that Defendant failed to disclose material information during the 2004 origination of the loan:

> (1) World Savings knew, but did not disclose, that negative amortization was guaranteed if borrowers made these listed low payments.  FAC ¶ 200.  This falls under 12 C.F.R. § 560.2(b)(4) and (b)(9).

> (2) World Savings further knew, and Wells Fargo and Wachovia did nothing to reveal once they assumed this loan, but did not disclose in the Loan Documents, that the listed payments set forth in the Note and other loan documents were calculated such that, if the payments were made, borrowers would be paying off 125% of the original principal balance. FAC ¶ 200.  This falls under 12 C.F.R. § 560.2(b)(4), (b)(9), and (b)(10).

> (3) Defendants failed in a number of ways to clearly, conspicuously and/or accurately disclose the terms of the Option ARM loan to Plaintiffs as Defendants were required to do under TILA.  FAC ¶ 208.  This falls under 12 C.F.R. § 560.2(b)(9).

> (4) World Savings, Wachovia and Wells Fargo failed to clearly, conspicuously, and accurately disclose a payment amount that corresponds to the actual interest rate being charged on the loan sufficient to pay both principle and interest, FAC ¶ 217, and failed to disclose and/or omission of material information in the Loan Documents.  FAC ¶ 229.  This falls under 12 C.F.R. § 560.2(b)(4), (b)(9), and (b)(10).

---

> (i) Furthers a vital state interest; and

> (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c).

United States District Court
For the Northern District of California

As noted, these claims bear directly on lending activities listed in 12 C.F.R. § 560.2(b) and are preempted by OTS regulation.  As noted above, the UCL claim is based on the Defendant's failure to disclose credit-related information during the 2004 origination of the loan.  Thus, a UCL claim predicated on these allegations is also preempted.  In *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961 (N.D. Cal. 2010), the court dismissed plaintiffs' UCL claim based on identical allegations as preempted by OTS regulation.  *Appling*, 745 F. Supp. 2d at 973.  *See also Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1175 (C.D. Cal. 2010) (stating that the alleged failures to disclose that the scheduled monthly payments would be insufficient to pay both principal and interest "fit squarely within Sections 560.2(b)(4) and (9)").

Plaintiffs' third cause of action alleging breach of contract likewise disputes the accuracy of Defendant's representations during the origination of the loan.  For the reasons stated above, the breach of contract claim is also preempted.

In sum, Plaintiffs' UCL and breach of contract claims are preempted by HOLA.  In contrast, claims based on the attempted loan modification which took place after November 2009 (fraud and negligent misrepresentation) are not subject to Defendant's arguments on preemption, but are problematic for other reasons discussed below.

D.    Negligence

In the second cause of action of the FAC, for negligence, the Romos alleged that Wells Fargo was negligent in determining that it could not provide Plaintiffs with a loan modification.  FAC ¶ 241.  Plaintiffs maintain that as a result of Wells Fargo's negligent conduct they lost equity in their home and accrued additional interest on their mortgage.  *Id*.  Plaintiffs allege that Defendant "had a duty to exercise reasonable care in considering Plaintiffs for a loan modification, including complying with HAMP guidelines."  *Id*.  Wells Fargo moves to dismiss Plaintiffs' negligence claim on three grounds.  First, financial institutions do not owe borrowers a duty of care in connection with making or servicing loans.  MTD at 6.  Second, Plaintiffs lack standing to sue under the HAMP guidelines.  MTD at 11. Third, Plaintiffs' negligence claim is time-barred.  MTD at 13.

United States District Court
For the Northern District of California

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

1.  Statute of Limitations

Defendant contends that Plaintiffs' negligence is time-barred under the applicable two-year statute of limitations.  C.C.P. § 339.  Plaintiffs received and sent the loan modification application package in November 2009.  *Id.* ¶¶ 67, 68.  Wells Fargo, however, denied Plaintiffs' application for loan modification as late as April 16, 2014. FAC ¶¶ 102, 167.  The suit was filed on May 15, 2015.  Not. of Removal, Ex. A.  Thus, Plaintiffs' negligence claim is not time-barred.

2.  Duty of Care

To make out a claim for negligence, a plaintiff must plead four elements: duty, breach, causation, and damages.  *See Marlene F. v. Affiliated Psych. Med. Clinic, Inc.*, 48 Cal.3d 583, 588, 257 Cal.Rptr. 98, 770 P.2d 278 (1989).  "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence."  (*Nymark, supra*, 231 Cal. App. 3d at p. 1095).  Whether a duty to use due care exists in a particular case is a question of law to be resolved by the court.  *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 57-58 (1988).

The California Courts of Appeal have reached different conclusions as to whether lenders owe borrowers a duty of care when considering a loan modification application.  *Compare Lueras v. BAC Home Loans Servicing L.P.*, 221 Cal. App. 4th 49, 67 (Cal. Ct. App. 2013) (residential loan modification is a traditional lending activity, and does not create a duty of care), *with Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 948 (Cal. Ct. App. 2014) (servicer has no general duty to offer modification, but a duty does arise when servicer agrees to consider borrower's application for modification).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991).  "Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender."  *Id.* (internal quotations omitted); *see also Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (describing "active participation" in a financed enterprise as something requiring "extensive control and shared profits").

**United States District Court**
For the Northern District of California

In *Lueras*, the court recognized these principles and "conclude[d] [that] a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." *Lueras*, 221 Cal.App.4th at 67, 163 Cal.Rptr.3d 804. A lender's obligations regarding loan modification "are created solely by the loan documents, statutes, regulations, and relevant [agency] directives and announcements[,]" not by general negligence law. *Id.* The *Lueras* court stated that the courts usually consider the six factors[4] identified in *Biakanja v. Irving*, 49 Cal.2d 647 (1958) to determine whether to recognize a duty of care. *Id*. at 63. The court concluded that these factors did not support imposition of a common law duty to offer or approve a loan modification for two reasons. First, if the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. *Id.* Second, if the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct. *Id.* Accordingly, the *Lueras* court held that lenders do not have a common-law duty of care in negligence, to offer, consider, or approve a loan modification, to offer foreclosure alternatives, or to handle loans as to prevent foreclosure.

The court in *Alvarez* disagreed with this conclusion. *See Alvarez*, 228 Cal.App.4th at 944-51, 176 Cal.Rptr.3d 304. In *Alvarez,* plaintiffs, like the Romos here, alleged fraud and unfair business practices in the origination of their residential mortgage loans, and negligence in the subsequent servicing of the loans, including negligent review of plaintiff's applications for loan modification. *Id*. at 943. More specifically, plaintiffs alleged that defendants owed them a duty to exercise reasonable care in the review of their loan modification applications once they had agreed to consider them. *Id*. at 944. There, the defendants "undertook to review" plaintiffs' loans for

---

[4] These balancing factors are "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." (*Nymark*, 231 Cal. App. 3d at 1098, quoting *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958)).

potential modification under the federal Home Affordable Modification Program (HAMP).  *Id.*
Plaintiffs argued that defendants breached this duty by (1) failing to review plaintiffs' applications
in a timely manner, (2) foreclosing on plaintiffs' properties while they were under consideration
for a HAMP modification and (3) mishandling plaintiffs' applications by relying on incorrect
information.  *Id.* at 945.  The *Alvarez* court stated that *Biakanja* factors supported a duty against
lender defendants which allegedly agreed to consider loan modifications, to timely and carefully
process the applications, and to avoid mishandling them.  *Id.* at 948-51.  It is worth noting that in
referring to *Lueras*, *Alvarez* noted that even in *Lueras*, the court granted plaintiffs leave to amend
to allege a cause of action for negligent misrepresentation.  *Id.* at 946.  Next, the court summarized
the reasoning and holding of a different case, *Garcia v. Ocwen Loan Servicing, LLC,* No. C 10-
290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010), in which the court imposed a duty of care
on a lender that undertook to review a loan for potential modification.  *Alvarez*, 228 Cal. App. 4th
at 946-48.  The *Alvarez* court announced that it was persuaded by the *Garcia* court's reasoning
among others for two reasons.  *Id.* at 948.  First, "although there was no guarantee the
modification would be granted had the loan been properly processed, the mishandling of the
documents deprived Plaintiff of the possibility of obtaining the requested relief."  *Id.* (quoting
*Garcia v. Ocwen Loan Servicing, LLC,* No. C 10-290 PVT, 2010 WL 1881098, at * 9 (N.D. Cal.
May 10, 2010).  Second, "the injury to Plaintiff [was] certain, in that he lost the opportunity of
obtaining a loan modification and . . . his home was sold."  *Id.*  (quoting *Garcia v. Ocwen Loan
Servicing, LLC,* No. C 10-290 PVT, 2010 WL 1881098, at * 9 (N.D. Cal. May 10, 2010).

In applying the fifth *Biakanja* factor (the moral blame attached to the defendant's conduct),
*Alvarez* found it was highly relevant that the borrowers "ability to protect his own interests in the
loan modification process [was] practically nil" and the bank held "all the cards."  *Id.* at 949
(quoting *Jolley* at 900).  First, borrowers are captive, with no choice of servicer, little information,
and virtually no bargaining power.  *Id.* at 948.  Second, borrowers cannot pick their servicers or
fire them for poor performance.  *Id.* at 949.  Because the borrowers cannot hire and fire their
mortgage loan servicers, servicers may have positive incentives to misinform and under-inform
the borrowers.  *Id.*  When servicers provide limited and low-quality information, they can save

United States District Court
For the Northern District of California

money on customer service and increase their chances to collect late fees and other penalties from confused borrowers.  *Id*.  Thus, the court concluded that "[t]he borrower's lack of bargaining power, coupled with conflicts of interest that exist in the modern loan servicing industry, provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers seeking a loan modification."  *Id*.  The court also discussed the California Homeowner Bill of Rights ("HBOR") that requires mortgage servicers to provide borrowers with a single point of contact responsible for coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.  *Id*. at 950 (citing Cal. Civ. Code §§ 2923.6, 2924.18).  Finally, the court stated that recognizing the duty to use reasonable care in the processing of a loan modification will not place an undue burden on mortgage banks and servicers, nor will it have a chilling effect on borrower's ability to obtain loan modifications.  *Id*. at 951.

The California Supreme Court has not spoken on this issue.  This Court finds the reasoning in *Alvarez* persuasive.  Indeed, most federal district courts have followed *Alvarez*.  *See e.g.*, *MacDonald v. Wells Fargo Bank N.A*, No. 14-CV-04970-HSG, 2015 WL 1886000, at *5 (N.D. Cal. Apr. 24, 2015) (stating that "[f]ederal district courts applying California law after *Alvarez* overwhelmingly hold that the California Supreme Court would recognize a duty of care during the loan modification review process"); *Johnson v. PNC Mortgage*, 2015 WL 662261, at * 4 (N.D. Cal. Feb. 12, 2015) ("Once PNC offered the Johnsons an opportunity to modify their loan, it owed them a duty to handle their application with ordinary care."); *Medrano v. Caliber Homes Loans, Inc.*, 2014 WL 72369256, at *11 (C.D. Cal. Dec. 19, 2014) ("Recently, however, the tide has turned. The California courts of appeal now recognize that lenders cannot offer modifications, generally, and then claim they have no duty to avoid processing the applications for those modifications in a slipshod manner."); *Penermon v. Wells Fargo Home Mortgage*, 2014 WL 4273268 (N.D. Cal. Aug. 28, 2014) (plaintiff was not entitled to modification, but "once [defendant] provided Plaintiff with the loan modification application and asked her to submit supporting documentation, it owed her a duty to process the completed application once it was submitted").

Here, as in *Alvarez*, the *Biakanja* factors weigh in favor of imposing a duty of care on Wells Fargo. From July 15, 2009 to April 30, 2015, Plaintiffs submitted nine applications for loan modification. FAC ¶¶ 48, 185, 186. Plaintiffs were "captive, with no choice of servicer, little information, and virtually no bargaining power." *Alvarez,* 228 Cal. App. 4th at 949. The loan modification application process was intended to affect Plaintiffs. *Nymark*, 231 Cal. App. 3d at 1098. It was foreseeable to Wells Fargo that the failure to carefully process in a timely manner the Romos loan modification applications could result in significant harm to Plaintiffs. *Id.* The Romos allege that "[a]s a result of Wells Fargo's negligence in determining that it could not provide Plaintiffs with a loan modification . . . the Plaintiffs have been damaged by losing equity in their home, accruing additional interest on their mortgage, paying more in mortgage payments, being threatened with foreclosure, suffering emotional distress, suffering credit loss through bankruptcy." FAC ¶ 241. As stated in *Garcia*, "[a]lthough there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief." (*Garcia v. Ocwen Loan Servicing, LLC, supra*, 2010 U.S. Dist. Lexis 45375, p. *9.). Further, the degree of certainty that the Romos suffered injury was certain. *Nymark*, 231 Cal. App. 3d at 1098. The Romos lost the opportunity of obtaining a loan modification and the delay prevented the Romos from obtaining relief elsewhere. As to the fifth *Biakanja* factor, it was foreseeable that the Romos "might be harmed by an inaccurate or untimely communication about . . . the status of a loan modification application, and the connection between the misrepresentation and the injury suffered could be very close." *Lueras*, 221 Cal. App. 4th 49 at 69.

Plaintiffs allege that Wachovia changed Plaintiffs points of contact numerous times. FAC ¶¶ 82, 95, 97. According to the Complaint, Plaintiffs "have been tossed around to many 'agents' and Home Prevention loss 'specialists' while receiving no positive or definitive answers on their loan application." FAC ¶ 156. Furthermore, the Romos attempted to have a sit-down conversation to discuss their loan modification, but Wachovia refused to meet with them. FAC ¶ 126. Moreover, Defendant lost Plaintiffs' documents and required the Romos to send "the same documentation time and time again." FAC ¶ 156. Finally, the "California Homeowner Bill of

Rights" (HBOR) (Assem. Bill No. 278 (2011-2012 Reg. Sess.); Sen. Bill No. 900 (2011-2012 Reg. Sess.)), which became effective January 1, 2013, supports the duty to "deal reasonably with borrowers in default to try to effectuate a workable loan modification."

In sum, Plaintiffs have sufficiently alleged a duty of care and breach thereof.  Thus, Plaintiffs' negligence claim regarding its handling of the loan modification application cannot be dismissed on this ground.

a.   <u>Standing to Sue Under the HAMP Guidelines</u>

Defendant also argues that the negligence and fraud claims should be dismissed because Plaintiffs have no standing under the HAMP Guidelines.  This argument is irrelevant because Plaintiffs do not assert a direct claim under HAMP.  Instead, violation of the HAMP Guidelines is cited as one of several reasons why Wells Fargo is liable for the claim of negligence, negligent misrepresentation and fraud.  Even if no direct federal claim could be stated under HAMP, that does not preclude that state claims might be informed in part by a lender's duty under the HAMP Guidelines.  *See Darcy v. CitiFinancial, Inc.,* 2011 WL 3758805, at *4 (W.D. Mich., Aug. 25, 2011) ("a state-law breach of contract claim [is] not preempted or *otherwise generally precluded by HAMP*") (emphasis added); *Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, at *8 (D. Mass. July 15, 2011) ("Plaintiffs' claims rest on the theory that the TPP Agreements entered into by Litton and the Plaintiffs constitute binding contracts and that Litton breached those contracts. Accordingly, the Plaintiffs' claims arise exclusively under state contract law and related state law doctrines, not under HAMP or any other federal law."); *Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342, 350 (D. Mass. 2011) ( Whether HAMP creates a private right of action or a cognizable property interest is not the issue in this case.  Plaintiffs have brought suit on the theory that the TPP constituted a contract between defendant and plaintiffs, and that defendant breached that contract.  Their claims arise under defendant's alleged failure to comply with its contractual obligations in the TPPs.").

E.   <u>Negligent Misrepresentation</u>

Plaintiffs allege that Wells Fargo's misrepresented that "at one point that they would be given a trial loan modification only for it to never arrive" and "repeatedly inform[ing] Plaintiff

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    that their loan modifications applications were not complete."  FAC ¶¶ 268, 267.  Wells Fargo

2    argues that Plaintiffs' negligent misrepresentation claim suffers from the same defect as their

3    negligence claim: the lack of a duty of care.  MTD at 13. Citing *Shamsian v. Atlantic Richfield*

4    *Co.*, 107 Cal. App. 4th 967 (Cal. Ct. App. 2003) and *Fox v. Pollack*, 181 Cal. App. 3d 954 (Cal.

5    Ct. App. 1986), Defendant also argues that Plaintiffs' allegation regarding a future trial

6    modification is not actionable.  MTD at 14.

7         Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit.

8    *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407-08 (1992), *as modified* (Nov. 12, 1992).  "Where

9    the defendant makes false statements, honestly believing that they are true, but without reasonable

10   ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." (5

11   Witkin, Summary of Cal. Law  Torts, § 720 at 819 (9th ed. 1988)).  A claim for negligent

12   misrepresentation requires a misrepresentation, justifiable reliance and damage.  *Alliance Mortg.*

13   *Co. v. Rothwell*, 10 Cal.4th 1226, 1239, fn. 4 (Cal. Ct. App. 1995).  In *Lueras*, the Court of Appeal

14   stated: "a lender does owe a duty to a borrower to not make material misrepresentations about the

15   status of an application for a loan modification . . . . The law imposes a duty not to make negligent

16   misrepresentations of fact."  *Lueras*, 221 Cal. App. 4th 49 at 68.

17        Plaintiffs' negligent representation claim fails for three reasons.  First, the elements of

18   negligent misrepresentation require "misrepresentation of a past or existing material fact."  *Home*

19   *Budget Loans, Inc. v. Jacoby & Meyers Law Offices*, 207 Cal. App. 3d 1277, 1285 (1989).  Thus,

20   to be actionable, a negligent misrepresentation must ordinarily pertain to past or existing facts;

21   predictions of future events or actions are opinions and not actionable fraud.  5 Witkin, Cal. Proc.

22   5th (2008) Plead, § 727, p. 143.  Here, the Complaint alleges a false statement about a future fact:

23   that Plaintiffs "would be given a trial loan modification."  FAC ¶ 267.  Second, to the extent the

24   negligent misrepresentation claim is based on Wells Fargo's denial of receipt of documents,

25   Plaintiffs knew that Wells Fargo's statements about non-receipts of documents were false because

26   they had submitted "all of the requested documents."  *Id.* ¶ 152.  Accordingly, there is no

27   justifiable reliance in this case.  Finally, any claims of reliance (*e.g.*, giving up the opportunity to

28   obtain financing elsewhere) are not supported by specific facts as required by *Iqbal* and thus not

**United States District Court**
For the Northern District of California

1    plausible.

2          For all the above reasons, the Court **DISMISSES** this claim with **LEAVE** to **AMEND**.

3    F.    Fraudulent Misrepresentation

4          Plaintiffs' fraud claim is predicated on the allegation that "Wells Fargo representatives

5    have repeatedly represented to the Plaintiffs, orally and in writing, that they would give the

6    Plaintiffs a loan modification if they qualify for same." FAC ¶ 258.  Defendant argues that the

7    fraud claim should be dismissed because Plaintiffs have failed to allege that (1) Wells Fargo made

8    a promise for a loan modification or (2) that Plaintiffs qualified for any loan.  MTD at 14.

9          "A cause of action for fraud contains the following elements: (1) a knowingly false

10   representation by Wells Fargo; (2) an intent to deceive or induce reliance; (3) justifiable reliance

11   by the plaintiff; and (4) resulting damages." *Hasso v. Hapke*, 227 Cal. App. 4th 107, 127 (Cal. Ct.

12   App. 2014).  Plaintiffs' fraudulent misrepresentation claim fails for three reasons.

13         First, Plaintiffs' fraud allegations are the same allegations that support Plaintiffs' negligent

14   misrepresentation cause of action.  As discussed above, Plaintiffs failed to allege justifiable

15   reliance.  Second, Plaintiffs failed to allege whether they were qualified for loan modification.

16   Third, the Romos did not get as far as plaintiff in *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d

17   878 (9th Cir. 2013).  In *Corvello*, plaintiff sued on the ground that defendants never offered her a

18   permanent mortgage modification after she made the trial payments under a trial period plan.  728

19   F.3d at 882.  The Ninth Circuit held that under the HAMP program, a bank is contractually

20   obligated under the terms of a trial period plan to offer a permanent loan modification to

21   borrowers who have complied with the trial period plan, such as by submitting accurate

22   documentation and making trial payments.  *Id.* at 883-84.  Here, however, Plaintiffs never

23   received a trial period plan or a permanent modification.  No contracted obligation was

24   established.

25         Thus, the Court **GRANTS** Wells Fargo's motion to dismiss this cause of action for failure

26   to state a claim with **LEAVE to AMEND** to remedy this deficiency.  The Court notes that if

27   Plaintiffs can state a claim, the fraud claim may not be time-barred.  The statute of limitations for a

28   fraud claim is three years since the discovery of the facts constituting the fraud or mistake.  Cal.

Civ. Proc. Code § 338(d).  The last events that might qualify as fraudulent took place on April 16, 2014.[5]

## V.    CONCLUSION

For the foregoing reasons, the motion to dismiss the UCL claim and breach of contract claim is **GRANTED**; these claims are dismissed with prejudice.  As to the negligence claim, the motion to dismiss is **DENIED**.  As to the negligent misrepresentation and fraudulent misrepresentation claim, the motion to dismiss is **GRANTED**, and these claims are **DISMISSED WITH LEAVE TO AMEND** within thirty (30) days of the date of this order.

This order disposes of Docket No. 10.

**IT IS SO ORDERED**.

Dated: January 27, 2016

_____
EDWARD M. CHEN
United States District Judge

---

[5] "On April 16, 2014, Wells Fargo denied the Plaintiffs for a loan modification on the basis that they did not provide them with the requested documentation, although Plaintiffs had sent Wells Fargo everything they had asked for dozens of time before.  At the time, the Plaintiffs' gross monthly income was nearly $7,000, which made them excellent candidates for a loan modification, pursuant to federal guidelines."  FAC ¶ 167.